UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Sandy Tsai, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 5709 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Jerry Karlik, Kargil Development Partners, LLC, Keith Giles, Frankel, Giles & Associates, Inc., Jordan Karlik, Picoulas Enterprises Corp., K Giles LLC, Inc., Kargil Blue Island, LLC, and Spiros Picoulas, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Sandy Tsai brought this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, alleging that the Defendants fraudulently induced her into investing $1.5 million dollars in a phony real estate development project.[1] R. 107, First Am. Compl.[2] After Tsai voluntarily dismissed her case, *see* R. 119, Pl.'s Sur-Reply to Defs.' Mot. to Dismiss; R. 120, 10/13/15 Minute Entry; R. 127, 11/17/15 Order, the Defendants moved for attorneys' fees and expenses based on an indemnification provision in the parties' investment agreement, *see* R. 134, Defs.' Mot. for Fees; R. 134-1, Exh. A, Subscription

---

[1]This Court has subject matter jurisdiction over this RICO case under 28 U.S.C. § 1331, and supplemental jurisdiction over the contractual fee-shifting claim, which arose from the same Subscription Agreement that gave rise to the RICO claims (and thus is part of the same case or controversy as the RICO case), *see Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000).

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Agreement; *see also* Fed. R. Civ. P. 54(d)(2). For the reasons explained below, the motion is granted.

## I. Background

This case arises from a failed business venture. In 2006, Tsai invested $1.5 million dollars in the 15th Street Blue Island LLC project. First Am. Compl. ¶ 2. Tsai gave the funds to the Defendants, who in turn promised to "purchase … real estate … develop the property and construct a multi-unit … condominium building" in southwest Chicago. *Id.* Instead of actually investing this money in the project, however, Tsai contends that the Defendants looted the funds to line their own pockets. *Id.* ¶ 4. (Remember, though, that she voluntarily dismissed these claims.)

In return for her $1.5 million investment, Tsai received a 25% stake in 15th Street Blue Island, LLC, a company set up by two of the Defendants (Jerry Karlik and Keith Giles) to fund the condominium project.[3] First Am. Compl. ¶¶ 2, 20, 37; Subscription Agreement at 1. Tsai executed a Subscription Agreement with the LLC under those terms in September 2006. *See* Subscription Agreement at 1, 8. By signing that Agreement, Tsai consented to a broad indemnification provision which also operated as a fee-shifting provision if Tsai unsuccessfully sued the LLC or its agents. *Id.* at 6. (The full text of the provision is quoted later in the Opinion.)

In 2014, Tsai brought this action alleging that the Defendants operated as a "criminal enterprise" and "misappropriate[d], loot[ed], and embezzle[d] the assets of 15th Street Blue Island, LLC" in violation of 18 U.S.C. § 1962(c). First Am. Compl. ¶¶ 4, 5; *see also* R. 1, Compl. After the Defendants moved to dismiss the Amended

---

[3]15th Street Blue Island, LLC, is not a defendant in this case. *See* First Am. Compl.

Complaint, R. 108, Defs.' Mot. to Dismiss, Tsai "consent[ed] to the ... Motion" and "request[ed] that this Court dismiss her First Amended Complaint in its entirety," Pl.'s Sur-Reply to Defs.' Mot. to Dismiss. The Court thereafter dismissed the case without prejudice, concluding that "[Tsai] ha[d] essentially file[d] a notice of voluntary dismissal of the case."[4] 10/13/15 Minute Entry.

Now the Defendants move under Federal Rule of Civil Procedure 54(d)(2) to recover attorneys' fees and expenses from this litigation. Defs.' Mot. for Fees; *see also* Fed. R. Civ. P. 54(d)(2). The Defendants rely on the fee-shifting provision in the Subscription Agreement to support the request for fees. *See* Defs.' Mot. for Fees; Subscription Agreement at 6. Tsai opposes the motion on the grounds that the provision is unenforceable. R. 135, Pl.'s Resp. Br.

## II. Standard

Illinois follows the American Rule, which presumes that "the prevailing party in a lawsuit must bear the costs of litigation ... ."[5] *Brundidge v. Glendale Fed. Bank, F.S.B.*, 659 N.E.2d 909, 911 (Ill. 1995); *accord Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000) (applying Illinois law and noting that under the American Rule, the presumption is that "parties bear their own legal expenses."). That

---

[4]The Defendants filed a motion for reconsideration seeking dismissal of Tsai's claims with prejudice. R. 121, Defs.' Mot. for Recons. The Court, however, denied reconsideration and upheld its earlier decision dismissing the case without prejudice. *See* 10/13/15 Minute Entry; 11/17/15 Minute Entry.

[5]Not that the parties even really dispute this, but Illinois law applies. When an agreement "[b]y its express terms ... is governed by Illinois law," the Court "must apply principles of Illinois law that govern, in general, questions of contract interpretation, and in particular, fee-shifting provisions in contracts." *Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys., LLC*, 2005 WL 948790, at *2 (N.D. Ill. Apr. 19, 2005). Here, the Subscription Agreement explicitly states that the "[a]greement shall be governed by and construed in accordance with the laws of the State of Illinois." Subscription Agreement at 7.

3

presumption, however, may be overcome where "an agreement between the parties allows the successful litigant to recover attorney fees and the expenses of suit." *Brundidge*, 659 N.E.2d at 911; *see also Grossinger Motor Corp., Inc. v. Am. Nat'l Bank and Trust Co.*, 607 N.E.2d 1337, 1347 (Ill. App. Ct. 1992) ("An exception … is when a contract provides for the award of such fees … ."). This type of agreement (referred to as an indemnification or fee-shifting provision) is "generally regarded as valid and enforceable." *Hader v. St. Louis Sw. Ry. Co.,* 566 N.E.2d 736, 742 (Ill. App. Ct. 1991).

That said, indemnification provisions are disfavored in Illinois and are strictly construed against the indemnitee. *Blackshare v. Banfield,* 857 N.E.2d 743, 746 (Ill. App. Ct. 2006) (reasoning that "indemnity contracts are to be strictly construed, and any ambiguity in the agreement is to be construed most strongly against the indemnitee."); *see also Grossinger*, 607 N.E.2d at 753 ("[C]ontractual provisions for attorney fees must be strictly construed … ."). Strictly construing these provisions not only "provides certainty in the law," but also gives parties "notice to include precise language on attorney fees when negotiating a contract." *Downs v. Rosenthal Collins Grp., LLC*, 895 N.E.2d 1057, 1061 (Ill. App. Ct. 2008). Thus, Illinois courts will only permit fee-shifting where "specific language" in the agreement provides that "'attorney fees' are recoverable." *Negro Nest, LLC v. Mid-N. Mgmt., Inc.*, 839 N.E.2d 1083, 1085 (Ill. App. Ct. 2005); *see also Qazi v. Ismail*, 364 N.E.2d 595, 597 (Ill. App. Ct. 1977) ("[A] court may not award attorney's fees as a matter of contractual construction in the absence of specific language."); *accord*

4

*JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 867 (7th Cir. 2013) ("Illinois requires that contractual fee-shifting provisions be clear and specific."). Finally, because fee-shifting so often "depends upon the particular language used and the factual setting of the case," courts routinely find that "it serve[s] no useful purpose to attempt to analyze or reconcile the numerous cases interpreting indemnity clauses." *Zadak v. Cannon,* 319 N.E.2d 469, 471 (Ill. 1974); *see also Buenz v. Frontline Transp. Co.*, 882 N.E.2d 525, 530 (Ill. 2008).

### III. Analysis

The Defendants move under Rule 54(d)(2) to recover attorneys' fees and expenses based on the indemnification provision in the Subscription Agreement. *See* Defs.' Mot. for Fees; Subscription Agreement at 6; *see also* Fed. R. Civ. P. 54(d)(2). This dispute over fees, they contend, is nothing but "a straightforward matter of contract interpretation."[6] Defs.' Mot. for Fees at 3. They assert that the provision's plain language clearly and unambiguously supports shifting their attorneys' fees and expenses onto Tsai. *Id.*; *see also* R. 136, Defs.' Reply Br. at 1, 4. To support their argument, the Defendants point to this language in the indemnification provision:

> The undersigned [Tsai] hereby agrees to indemnify and hold harmless the Company and the Manager, and their respective employees and agents and their respective successors and assigns (the "Indemnified Parties") … *in any action, suit or proceeding brought by the undersigned against any Indemnified Parties in which the undersigned does not prevail.*

---

[6]The parties do not dispute that the amount of reasonable attorneys' fees and expenses incurred by the Defendants is $81,942.75. Defs.' Mot. for Fees at 2-3.

5

Subscription Agreement at 6 (emphasis added); *see also* Defs.' Mot. for Fees at 2-3; Defs.' Reply Br. at 4, 7. They maintain that language encompasses Tsai's voluntarily dismissed RICO action. Defs.' Mot. for Fees at 3; Defs.' Reply Br. at 4, 7.

Tsai does not challenge this plain language interpretation; instead, she asserts that the Defendants are not entitled to attorneys' fees and expenses for three other reasons: first, the indemnification provision is void as against public policy. Pl.'s Resp. Br. at 1, 4-6. Second, the indemnification provision is illogical and overbroad. *Id.* at 1, 6-7. And finally, four of the nine defendants are not actually "Indemnified Parties"[7] as defined by the indemnification provision. *Id.* at 7. The Court addresses each of the parties' arguments in turn.

## A. Plain Language

The indemnification provision's plain language warrants fee-shifting in this case. The full text of that provision is set forth below, and the plain language of the provision covers both (a) the type of *case*, namely, a suit brought by Tsai against the Defendants where she does not prevail; and (b) the type of *expense*, namely, attorneys' fees, as the italicized terms demonstrate:

> To the fullest extent permitted by law, the undersigned [Tsai] hereby agrees to indemnify and hold harmless the Company and the Manager, and their respective employees and agents and their respective successors and assigns (the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities, expenses (including *attorneys'* and expert witness fees and expenses), judgments, fines, settlements and other amounts arising out of any and all actions, suits or proceedings in which any Indemnified Party may be involved, or threatened or required to be involved, including without

---

[7]The "Indemnified Parties" as defined in the Subscription Agreement are the "Company [15th Street Blue Island, LLC] and the Manager [Kargil Blue Island, LLC], and their respective employees and agents and their respective successors and assigns." Subscription Agreement at 6.

> limitation, liabilities under the federal and state securities laws (i) resulting from or caused by any breach of any representation, warranty or agreement made by the undersigned in this Subscription Agreement or in connection herewith, or (ii) in any action, suit or proceeding *brought by the undersigned against any Indemnified Parties in which the undersigned does not prevail.*

Subscription Agreement at 6 (emphases added). The Defendants do not invoke Clause (i) of the indemnification provision, so the parties do battle over Clause (ii). *See* Defs.' Mot. for Fees at 2-3; Defs.' Reply Br. at 4, 7; Pl.'s Resp. Br. at 5-7; Pl.'s Resp. Br. at 5 ("The Kargil Defendants[] do not rely upon section (i) in their Motion for Attorneys' Fees and Expenses, likely because Ms. Tsai's RICO claims do not arise from any breach of any representation, warranty or agreement made by Ms. Tsai in the Subscription Agreement.").

Clause (ii) clearly covers Tsai's voluntarily dismissed RICO case against the Defendants. The clause applies to "any action, suit or proceeding brought by the undersigned against any Indemnified Parties in which the undersigned does not prevail." Subscription Agreement at 6. Each element is met. This case is, of course, an "action, suit or proceeding." *Id.* Tsai is the one who brought the suit. She filed it against "Indemnified Parties" (this term is discussed in more detail later in this Opinion). *Id.* And Tsai did "not prevail." *Id.* To be sure, there might be some debate over whether the Defendants prevailed—it is not as if they won a judgment against Tsai—but Clause (ii) does not require that the Defendants prevail in order to shift fees. Rather, it only requires that Tsai "does not prevail." *Id.* Tsai voluntarily dismissed her case, and won no judgment against the defense, so she did not prevail. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d

7

1007, 1015 (7th Cir. 1985) ("Under Rule 54(d), '[w]here there is a dismissal of an action, even where such dismissal is voluntary and without prejudice, the defendant is the prevailing party.'" (alteration in original) (quoting 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.70[4] (2d ed. 1985))); *see also Frey v. Fraser Yachts*, 1994 WL 87512, at *2 (N.D. Ill. Mar. 15, 1994) (same). In light of Clause (ii)'s text and the circumstances of this case, even construing "any ambiguity in the agreement … most strongly against the [Defendants]," *Blackshare*, 857 N.E.2d at 746, the provision's plain language still requires Tsai to indemnify the Defendants for attorneys' fees and expenses. Because "the language of the contract unambiguously provides an answer to the question at hand," Illinois law dictates that "the inquiry is over." *LaSalle Nat'l Bank v. Serv. Merch. Co.*, 827 F.2d 74, 78 (7th Cir. 1987) (applying Illinois law). The indemnification provision is sufficiently clear to justify awarding attorneys' fees and expenses to the Defendants.

### B. Illinois Public Policy

Tsai's main argument against enforcing the fee-shifting provision is that "interpret[ing] … the indemnification clause to include [her] RICO claims is contrary to Illinois law and public policy." Pl.'s Resp. Br. at 4. She contends that the provision is akin to "[an] agreement[] to indemnify against intentional misconduct,'" *id.* (quoting *Brennan v. Connors*, 644 F.3d 559, 562 (7th Cir. 2011) (applying Illinois law)), which is unenforceable under Illinois law,[8] *see Davis v. Commonwealth*

---

[8] Tsai notes that there are two situations where courts will enforce agreements to indemnify against intentional misconduct: (1) insurance contracts; and (2) agreements that clearly and explicitly evidence the parties' intent to indemnify against intentional

8

*Edison, Co.*, 336 N.E.2d 881, 885 (Ill. 1975). The Defendants disagree, asserting that the fee-shifting provision "provides only for post-judgment fee shifting and not liability indemnification." Defs.' Reply Br. at 5.

The Defendants are right: the indemnification provision at issue here concerns "post-judgment fee shifting," which is generally permitted in Illinois. *See supra* Section II. It does not concern *liability* indemnification, that is, indemnification against one's unlawful conduct. This is important because the cases that Tsai relies on analyze the extent to which *liability* indemnification provisions are enforceable under Illinois law. They do not scrutinize contractual *fee-shifting* indemnification provisions like the one at issue here. For example, in *Brennan v. Connors*, an attorney and his former client entered a settlement agreement relinquishing any rights they had under their former representation agreement. 644 F.3d at 560-61. Under the settlement agreement, the parties agreed to indemnify one another if either party had assigned their rights under the representation agreement to someone else. *Id.* at 560-62. After the attorney's former partner sued him for fraudulently concealing the client's retainer fees, the attorney sued the client, seeking indemnification if he were to be found liable in the underlying case. *Id.* The Seventh Circuit noted that even if the indemnification provision applied (it turned out it did not), requiring the client to indemnify the attorney for "deliberately cheating his law partner out of a firm asset" would violate public policy. *Id.* at 562-63.

---

misconduct. Pl.'s Resp. Br. at 4. These exceptions are irrelevant, however, because they apply to *liability* indemnification, not post-judgment fee-shifting clauses.

9

Likewise, in *Beavers v. Walsh*, a telecommunications vendor agreed to install telephones with six-inch-long phone cords (to deter suicide attempts) in the Champaign County jail. 2007 WL 2681098, at *1 (C.D. Ill. Aug. 27, 2007). The vendor agreed to indemnify the County for tort liability "resulting in whole or in part from [its] *negligent acts* … ." *Id.* (emphasis added). After a detainee committed suicide (using a phone cord that was over six inches in length) and his estate sued the County for deliberate indifference, the County sought indemnification from the vendor. *Id.* The court declined to enforce the indemnity clause after noting that "seek[ing] indemnification from a less culpable party for [one's] own intentional acts … is disfavored … ." *Id.* at *5.

Neither *Brennan* nor *Beavers* is factually or legally on point. Here, the Defendants rely on the Subscription Agreement's *fee-shifting* provision to recoup attorneys' fees incurred in this voluntarily dismissed RICO action. They do not seek to require Tsai to indemnify them for allegedly wrongful acts. Tsai has failed to cite even one case to support her position as to fee-shifting,[9] and there is simply no

---

[9]Tsai also cites two other district court decisions that she claims support her position: *Brown v. Creative Collections, Inc.*, 2002 WL 32345937 (E.D. Penn. June 10, 2002), and *Baker v. BP America, Inc.*, 749 F. Supp. 840 (N.D. Ohio 1990). *See* Pl.'s Resp. Br. at 6 n.3. These cases are irrelevant too. To start, neither case applies Illinois law. *See Brown*, 2002 WL 32345937, at *2 (applying Pennsylvania law); *Baker*, 749 F. Supp. at 846-47 (applying Ohio law to pendent state law claim). *Brown* held that the plaintiff was not entitled to liability indemnification after observing that "Pennsylvania courts have … refused to require an insurer to defend an insured for the insured's own intentional torts or criminal acts." 2002 WL 32345937, at *3. And *Baker* held that the defendant could not claim indemnification if held liable under the plaintiffs' common law fraud claim after reasoning that "since intent is an essential element of fraud, indemnification or contribution can never be claimed for that tort as a matter of law." 749 F. Supp. at 846-47. Neither case concerned a post-judgment fee-shifting provision, so neither case informs the Court's analysis here.

reason why the fee-shifting provision here should be construed as an agreement to indemnify against intentional misconduct.

Indeed, Clause (ii) in the indemnification provision underscores the difference between fee-shifting and liability indemnification. The clause allows for fee-shifting "in any action, suit or proceeding brought by the undersigned against any Indemnified Parties in which the undersigned *does not prevail*." Subscription Agreement at 6 (emphasis added). On its face, Clause (ii) does not require that Tsai indemnify the Defendants for any illegal conduct that she is able to prove. In other words, if Tsai had sued the Defendants and *prevailed*, the Defendants would have no claim to attorneys' fees under Clause (ii). By the same token, that Tsai sued the Defendants and did not prevail means that her RICO allegations remain just that—unproven allegations. Ordering Tsai to pay for the Defendants' attorneys' fees in this case simply is not the same as ordering her to indemnify anyone for intentional misconduct. Tsai's public policy argument must be rejected.

### C. Overly Broad or Illogical

The next argument Tsai advances is that the indemnification provision is unenforceable because it is "illogical and unlimited in scope and time." Pl.'s Resp. Br. at 6. Specifically, Tsai claims that the provision "effectively reverses the American Rule as to any litigation [she] files against any of the … Defendants for all time and any cause of action." *Id.* at 7. That the provision could apply to "a car accident with one of the … Defendants," she contends, evidences that it is too broad, and as a result, unenforceable. *Id.* at 6-7. To rebut this argument, the Defendants

11

point out that "[Tsai] cites no authority prohibiting parties from reaching a broad fee-shifting agreement," and that "[e]ven if it were appropriate to now narrow the provision to cover only actions that the parties anticipated, Tsai's failed RICO action and other actions relating to [15th Street Blue Island, LLC] would [still] fall within the scope." Defs.' Reply Br. at 7.

When construing fee-shifting agreements, "the [C]ourt must determine the intention of the parties with respect to the payment of [attorneys'] fees." *Grossinger*, 607 N.E.2d at 1348; *see also Jackson v. Hammer*, 653 N.E.2d 809, 817 (Ill. App. Ct. 1995) (same). In other words, the Court must determine the "intended scope of the [indemnification provision]." *Burns v. Ford Motor Co.*, 331 N.E.2d 325, 332 (Ill. App. Ct. 1974). "Recovery may be had for the costs and expenses of litigation, including attorney's fees, where such items are within the contemplation of the parties as revealed by *a reasonable construction of the contract … .*" *Mitchell v. Peterson*, 422 N.E.2d 1026, 1033 (Ill. App. Ct. 1981) (emphasis added); *cf. Burns v. Ford Motor Co.*, 331 N.E.2d 325, 331-32 (Ill. App. Ct. 1974) ("An indemnification contract is to be given a fair and reasonable interpretation based upon a consideration of all its language and provisions. The primary object of the construction of a constract [sic] is to give effect to the intention of the parties.").

Here, regardless of whether Clause (ii) applies broadly to any suit brought by Tsai against the Indemnified Parties or applies narrowly to only suits arising out of the Subscription Agreement, the clause requires her to pay the defense's fees because she did not prevail. With regard to the broad interpretation, Tsai cites no

12

case law that would prevent one side of a business deal to demand that the other pay for fees incurred in defending against—and defeating—a suit brought by the other, regardless of whether the suit arose out of the business relationship. Here, by demanding the broad fee-shifting provision, the LLC could guard against meritless suits brought against the LLC by its subscriber-members, who presumably wanted to invest in the LLC by becoming a member and thus were willing to give the broad fee-shifting promise.

Even if a narrower interpretation of Clause (ii) were more reasonable than the broad one, Tsai would still have to pay because the narrower interpretation would still cover the RICO action. To start, the Subscription Agreement addresses Tsai's investment in the Defendants' real estate project and the corresponding stake she received in 15th Street Blue Island, LLC. *See* Subscription Agreement. Because the Agreement does not purport to govern Tsai's relationship vis-à-vis the Defendants in any other context, it is plausible to argue that the Agreement evidences an intention to correspondingly limit the subject matter of the indemnification provision within that Agreement to the real estate project. *See Advocate Fin. Grp. v. Poulos*, 8 N.E.3d 598, 612 (Ill. App. Ct. 2014) (concluding that "reading the attorney-fee provision *in the context of the contract as a whole*, it is apparent that the only reasonable interpretation is that 'Loss Mitigation' as used in the clause is referring to plaintiff." (emphasis added)). But still that would cover the RICO case, which did arise out of the Subscription Agreement and the real estate project.

Tsai's argument that the indemnification provision is overbroad is also problematic because the provision specifies that it applies only "[t]o the fullest extent permitted by law." Subscription Agreement at 6. In other words, when construing the provision, the Court should reject illogical and overly broad interpretations that would render it unenforceable. *Cf. Highland Supply Corp. v. Ill. Power Co.*, 973 N.E.2d 551, 559 (Ill. App. Ct. 2012) ("[A] court will not place an illogical and ridiculous construction upon the language of a contract."). So even if the provision could not be enforced as to, for example, a car accident between the parties, then still the Agreement would allow for indemnification under Clause (ii) to the fullest extent allowed by law. Here, the RICO case comfortably fits within the scope of the claims arising out of the Subscription Agreement and the real estate project.

### D. "Indemnified Parties"

Tsai offers one alternative argument to try and mitigate the impact of the indemnification provision. She contends that even if the indemnification provision is enforceable, four of the nine defendants are not actually "Indemnified Parties" as defined in the Subscription Agreement. Pl.'s Resp. Br. at 7. This means that, according to Tsai, she is not liable vis-à-vis the indemnification provision for the fees those four defendants incurred. *Id.* ("The indemnification clause does not require the indemnification of non-parties.").

The indemnification provision defines "Indemnified Parties" as "the Company [15th Street Blue Island, LLC] and the Manager [Kargil Blue Island LLC], and

14

their respective employees and agents and their respective successors and assigns." Subscription Agreement at 1, 6. Neither party disputes that Jerry Karlik, Keith Giles, Picoulas Enterprises Corp., Kargil Blue Island, LLC, and Spiros Picoulas are covered by that definition. *See* Pl.'s Resp. Br. at 7; Defs.' Reply Br. at 8. It is the four remaining defendants—Jordan Karlik, Kargil Development Partners, LLC, Frankel, Giles & Associates, Inc., and K Giles LLC—whom Tsai asserts do not fall under the "Indemnified Parties" umbrella. Pl.'s Resp. Br. at 7.

But Tsai's own allegations in the First Amended Complaint (for short, the "Complaint") are sufficient to establish that each of these defendants is an agent or employee of 15th Street Blue Island LLC (the "Company") or Kargil Blue Island LLC (the "Manager").[10] *See* First Am. Compl.; Subscription Agreement at 1. For example, the Complaint states that Jordan Karlik is an "authorized *agent* and representative of Kargil Blue Island, LLC and its *de facto co-manager*." First Am. Compl. ¶ 17 (emphases added). Jordan Karlik is an easy case—he squarely qualifies as an "Indemnified Part[y]."

---

[10]Ordinarily the Court would not treat allegations based on "information and belief," *see* First Am. Compl. ¶¶ 53, 168, 174, 181, as admissions for purposes of deciding a motion for fees. *Cf. Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("When a plaintiff sets out allegations on information and belief, he is … acknowledging that his allegations are 'based on secondhand information that [he] believes to be true.'" (quoting Black's Law Dictionary 783 (7th ed. 1999))); *Moriarty v. Larry G. Lewis Funeral Dirs. Ltd.*, 150 F.3d 773, 778 (7th Cir. 1998) ("An allegation [based on information and belief] can't sensibly be called an 'admission'; it is a characterization of (or perhaps just a speculation about) what evidence unknown to the pleader may show."). But here, Tsai offers nothing else into the record to undermine those allegations. Had Tsai requested a hearing on whether the four parties are in fact agents of 15th Street Blue Island, LLC or Kargil Blue Island, LLC, then the Court would have considered the request. But she did not do this, so the Court will incorporate the allegations into the record as admissions.

Next up is Kargil Development Partners, LLC. The Complaint asserts that Kargil Development Partners, LLC "contracted" with Kargil Blue Island, LLC "to assist in the development of the [real estate property]." First Am. Compl. ¶ 105. Pursuant to this contract, Kargil Development Partners, LLC would submit development fees to Jerry Karlik, Keith Giles, or Jordan Karlik "for [its] supposed services." *Id.* ¶¶ 109, 110. Tsai maintains that those fees were really just a way for the Defendants to tap into and use Tsai's $1.5 million investment to pay for their travel, golf, meals, and other personal expenses. *Id.* ¶¶ 105, 109. From these admissions, the Court can plausibly infer that Kargil Development Partners, LLC was Kargil Blue Island, LLC's agent. This is because Kargil Development Partners, LLC, according to Tsai, was really just a shell company set-up by Jerry Karlik, Keith Giles, and Jordan Karlik (Kargil Blue Island, LLC's agents) to fund their personal expenses. That Kargil Blue Island, LLC (via its agents) had virtually complete control over Kargil Development Partners, LLC is enough to establish agency, *see Wonaitis v. Kustak*, 309 N.E.2d 300, 303 (Ill. App. Ct. 1974) ("The essential elements of agency are ownership and control."); *see also* Restatement (Third) of Agency § 1(1) (2006) (defining agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."), which means that Kargil Development Partners, LLC is also an "Indemnified Part[y]."

Frankel, Giles & Associates, Inc., another defendant who Tsai claims does not fall under the "Indemnified Parties" umbrella, was 15th Street Blue Island, LLC's real estate broker. First Am. Compl. ¶¶ 40-41. (In 2007, 15th Street Blue Island, LLC bought a parking lot, which was supposed to be the future site of its condominium building; according to Tsai, Frankel, Giles & Associates, Inc. brokered the deal. *Id.* ¶¶ 40-41, 47.) Because "[a] broker is an agent who agrees to act for a principal in a transaction," *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 906 (Ill. App. Ct. 1998); *see also Plastics & Equip. Sales Co. v. DeSoto, Inc.*, 415 N.E.2d 492, 496 (Ill. App. Ct. 1980) ("A broker has been defined as an agent who bargains or carries on negotiations on behalf of his principal as an intermediary between the latter and third persons in transacting business relative to, inter alia, the purchase or sale of any form of property."), this Court concludes that Frankel, Giles & Associates, Inc. was 15th Street Blue Island, LLC's agent, and therefore, an "Indemnified Part[y]" under the Subscription Agreement.

The last unaccounted-for defendant is K Giles LLC. It is true, as the Defendants point out, that "Tsai never even alleged any substantive involvement by [K Giles LLC]." Defs.' Reply Br. at 8 n.4; *see also* First Am. Compl.; Defs.' Mot. to Dismiss. She did assert in the Complaint, however, that "[a]t all relevant times, [15th Street Blue Island, LLC], [Kargil Blue Island, LLC], Frankel, Kargil, [Picoulas Enterprises Corp.], and KGILES were an *association-in-fact and 'enterprise'* engaged in the [real estate project]." First Am. Compl. ¶ 192 (emphasis added); *see also id.* ¶¶ 5, 81, 99, 102 (referring to K Giles LLC as part of the

17

Defendants' "criminal enterprise"). This assertion, coupled with Tsai's request that the Court hold all of the Defendants "jointly liable" for their alleged racketeering activities, *see id.* at 39, supports finding that K Giles LLC (and every other defendant for that matter) qualifies as an "Indemnified Part[y]" under the Subscription Agreement.

So, despite Tsai's claim to the contrary, all of the Defendants are within the scope of the "Indemnified Parties" definition, which means that Tsai is responsible for all of the Defendants' attorneys' fees and expenses in this case. That Tsai brought two RICO counts against different defendants (Tsai alleged Count 1 against "Karlik, Giles, Picoulas, and Jordan" and Count 2 against "[Kargil Blue Island, LLC], Frankel, Kargil, [Picoulas Enterprises Corp.], and KGILES") makes no difference. As a practical matter, the record does not show that any individual defendant incurred attorneys' fees or expenses *separate* from those incurred by the Defendants as a joint defense. Had the record shown that one of the Defendants paid for its own legal counsel *and* was not an "Indemnified Part[y]," the Court would have reduced the Defendants' attorneys' fees accordingly. But neither side even suggests this happened. *See* Defs.' Resp. Br. at 8 ("[A]t all times the … Defendants presented a unified defense against Tsai's failed RICO claims in this action, which was funded by indemnified [D]efendants Keith Giles and Jerry Karlik."); Pl.'s Resp. Br. at 7. The Court rejects Tsai's argument that not all the defendants are "Indemnified Parties" and instead holds that she is responsible for the reasonable attorneys' fees and expenses the Defendants incurred in this case.

18

## IV. Conclusion

For the reasons stated above, the Defendants' motion for attorneys' fees and expenses, R. 134, is granted. The amount itself is uncontested: $81,942.75. Accordingly, Plaintiff shall pay a total of $81,942.75 in attorneys' fees and expenses to Defendants Jerry Karlik; Keith Giles; Picoulas Enterprises Corp.; Kargil Blue Island, LLC; Spiros Picoulas; Jordan Karlik; Kargil Development Partners, LLC; Frankel, Giles & Associates, Inc.; and K Giles LLC.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2016